IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CLIENTRON CORP.,**  Plaintiff  v.  **DEVON IT, INC.,**  Defendant | **CIVIL ACTION**  NO. 13-05634 |

**MEMORANDUM AND ORDER**
**DENYING DEFENDANT'S MOTION TO STAY PROCEEDINGS**

**Baylson, J.**                                                                                               **March 10, 2014**

Plaintiff, Clientron Corp., a Taiwanese corporation, filed this action to enforce a foreign arbitration award against Defendant Devon IT, Inc., a Pennsylvania corporation, under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (commonly called the "NY Convention"), codified in 9 U.S.C. §§ 201-208, and Pennsylvania's Uniform Foreign Money Judgment Recognition Act ("PUFMJRA"), 42 P.S. §§ 22001-22009.  ECF 1.  Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant has filed a Motion to Dismiss the enforcement complaint, arguing that it fails to state a claim on various grounds, including that the arbitration panel did not have authority to issue a final award.  ECF 9.  In the alternative, Defendant has requested that the Court stay the case while Defendant seeks to set aside the arbitration award in a parallel proceeding currently underway in Taiwan.  ECF 9 ¶ 13.  For the following reasons, Defendant's Motion to Stay is denied.  The Court reserves ruling on the remainder of Defendant's Rule 12(b)(6) Motion pending the submission of evidence of relevant Taiwanese law, pursuant to Rule 44.1 .

1

**I.     Facts and Procedural History[1]**

Clientron is a Taiwan-based manufacturer and distributor of computer components. Devon is an information technology company that sells computer hardware and software. In 2008, the parties entered into a Supply and Purchase Agreement ("Agreement") in which Clientron agreed to manufacture and sell certain products to Devon. ECF 1 ¶ 7. Section 13.3 of the Agreement contains a dispute resolution provision, which states that disputes between the parties will be brought before the Taiwan Trade Arbitration Council in the event that informal dispute resolution attempts fail.[2] The agreement also has a governing law provision, which states that the Agreement will be construed under Taiwanese law. ECF 1 at 21.

On September 13, 2012, Clientron submitted a request for arbitration to the Chinese Arbitration Association, alleging Devon breached its obligations under the Agreement. ECF 1 ¶ 8. An arbitration panel was convened on November 29, 2012, and the parties then engaged in arbitration proceedings. ECF 1 ¶ 8. On August 5, 2013, the panel issued a "final award" in favor of Clientron for US$ 6,574,456.17, as well as 5% per annum interest and arbitration costs. ECF 1 ¶ 9.

---

[1] These factual allegations are taken from the Complaint. They are presumed true for the purpose of evaluating Defendant's Motion to Dismiss. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

[2] The dispute resolution provision reads in full:

Dispute Resolution

Parties intend that any dispute be resolved informally through good faith negotiations. Any party may initiate negotiations by written notice to the other stating the dispute details. Parties will jointly define the dispute and propose a remedy. If this process does not resolve the dispute, then either party may escalate the problem to senior management.

Any dispute remaining after resolution efforts above relating to this Agreement shall be resolved in the Taiwan trade arbitration council and if this still not resolves the dispute then the problem finally has to be escalated to an appropriate court of law in Taipei, Taiwan for final determination.

ECF 1 at 21 (grammatical errors in original).

On September 25, 2013, Clientron initiated this action to enforce the Taiwanese arbitration award against Devon. ECF 1. After the parties filed their Motion to Dismiss briefing, ECF 9, 11, 12, 17, the Court held a hearing on January 28, 2014 to entertain arguments about whether to grant Defendant's Motion to Stay. ECF 25 (transcript of hearing).

At the hearing, the Court posed four questions to the parties:

Question 1: is the arbitration decision issued pursuant to § 13.3 of the Agreement binding on the parties and what is required to make that determination;

Question 2: what is the nature of the proceeding in Taiwan initiated by Devon and how long will it take;

Question 3: should the Court proceed under Rule 44.1 in making a review of Taiwanese law or should it stay the proceeding pending the results from the Taiwan court; and

Question 4: if the Court were to issue a stay, should it require Devon to post a supersedeas bond. ECF 25 at 4-5.

As to question 1, Clientron argued that the award is binding on Devon and that this Court was collaterally estopped from hearing some of Devon's arguments because they had already been made before the arbitration tribunal. ECF 25 at 6. Devon argued that the award was not binding because the arbitration panel's decision is not final under § 13.3. Devon also acknowledged that in order to prevail on its Motion to Dismiss it would have to present evidence that Taiwanese law supported its interpretation of § 13.3. ECF 25 at 17-18. Clientron had already implicitly recognized the need to provide evidence of relevant Taiwanese law and included an affidavit from a Taiwanese legal expert in its Response in opposition to the Motion to Dismiss. ECF 11-2.

As to question 2, the parties described the nature of the proceeding in Taiwan. They represented that Taiwanese law does not permit an appeal of an arbitration award—only that a party may initiate what United States jurisprudence might regard as a collateral attack to set

3

aside the award—and that such a proceeding had been initiated by Devon. ECF 25 at 7, 20. Clientron further represented that the Taiwan proceeding could take as long as three years. ECF 25 at 10.

As to question 3, both parties agreed that the Court had the authority to stay the case under the NY Convention, but Clientron suggested that the Court did not have power to stay the proceeding under § 7 of PUFMJRA.[3]  ECF 25 at 11.  The parties indicated that the relevant standard to determine whether a stay should be granted under the NY Convention comes from the six-factor test in *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310 (2d Cir. 1998), and *Jorf Lasfar Energy Co., S.C.A. v. AMCI Exp. Corp.*, Case No. 05-cv-0423, 2005 WL 3533128 (W.D. Pa. Dec. 22, 2005).  ECF 25 at 12, 22.

Clientron argued against a stay, noting that (1) the objective of arbitration is to avoid lengthy litigation; (2) federal courts should proceed with the recognition of foreign awards in the interests of international comity; and (3) any additional delay would prejudice Clientron. Specifically, Clientron asserted that Devon had already sold the products made up of Clientron components that Devon claims were defective to a downstream vendor and is thus litigating with the money it owes Clientron.  In Clientron's view, any continued delay in this posture unfairly prejudices it.  ECF at 13-16.  Devon, on the other hand, argued that a stay was appropriate to preserve judicial resources because (1) a Taiwanese court is in the process of reviewing the exact

---

[3] Section 7 of the PUFMJRA reads:

> If the defendant satisfies the court either than an appeal is pending or that he is entitled and intends to appeal from the foreign judgment, the court may stay the proceedings until the appeal has been determined or until the expiration of a period of time sufficient to enable the defendant to prosecute the appeal.

42 P.S. § 22007.  According to Clientron, because Taiwan law does not allow for an appeal of an arbitration award, the Court has no power to issue a stay under § 7 of the PUFMJRA.  ECF 25 at 11.  Devon contends that, because Taiwanese law permits a collateral attack as the only means by which to contest an arbitration award, the collateral attack should be considered an appeal for the purposes of issuing a stay under the PUFMJRA.  ECF 25 at 29.

same issues raised before this Court; (2) Taiwanese courts have greater expertise in applying Taiwanese law; and (3) continuation of the present proceedings runs the risk of inconsistent judgments. ECF 25 at 21-23.

As to question 4, Clientron argued that a stay must be accompanied by Devon posting a supersedeas bond of approximately $8,000,000. ECF 25 at 13-16. Devon argued that it may have to post a surety in the Taiwanese court and that posting double surety would be unfair. Devon, however, was unsure what amount, if any, it would have to post. ECF 25 at 24-25.

At the end of the hearing, the Court posed two questions of law to the parties and requested that they file their answers in writing:

Question 1: If Devon loses its action to set aside the arbitration award in Taiwan, would the District Court have a duty to make some inquiry or take evidence as to the enforceability of the arbitration award, or could the District Court rely on the Taiwanese decision?

Question 2: Can Devon post a bond in the amount of $7,000,000 if the District Court decides that it is going to grant a stay conditional on bond?

Question 1 related to the Court's concern about needless delay. That is, if Devon would be able to raise the same issues regardless of the outcome of the Taiwanese litigation, is there any benefit in delaying addressing Devon's arguments? In its response, Devon asserted that it would be able to raise its arguments before the Court, even if it lost in Taiwan. ECF 26 at 3. The Court therefore observes that Devon refuses to be bound by the proceedings in Taiwan if their outcome is unfavorable to Devon's position.

As to Question 2, Devon refused to answer the Court's question about whether it was financially capable of posting a bond. Instead, Devon argued it would be fundamentally unfair for the Court to require it to post a bond and that it was therefore unwilling to do so. ECF 26 at 5. From its failure to respond to the Court's question, the Court infers that Defendant either cannot or will not post a bond.

**II.     Jurisdiction**

Because Clientron seeks enforcement of its foreign arbitration award under the NY Convention, federal jurisdiction exists under 9 U.S.C. § 203.  Additionally, because Devon is a Pennsylvania corporation with its principal place of business in King of Prussia, Pennsylvania, and Clientron is a Taiwanese corporation with its principal place of business in New Taipei City, Taiwan, and because the amount in question exceeds $75,000,  federal diversity jurisdiction exists as to Clientron's PFUMJRA claim under 28 U.S.C. § 1332.

**III.    Propriety of Issuing a Stay under the NY Convention**

    **A.     Legal Standard**

As a general matter, a court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936).  Accordingly, a court may "[i]n the exercise of its sound discretion . . . hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." *Bechtel Corp. v. Local 215,* 544 F.2d 1207, 1215 (3d Cir.1976).  In the context of confirming a foreign arbitration award, the NY Convention complements a district court's inherent power by expressly conferring discretion on a court to stay enforcement of a foreign arbitration award pending the outcome of an application to set aside the award before a court of the country in which the award was made:

> If the application for the setting aside or suspension of the award has been made to a competent authority referred to in article V(1)(e),[4] the authority before

---

[4] Article V(1)(e) of the NY Convention provides:

Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:
. . . .

6

> which the award is sought to be relied upon many, if it considers it proper, adjourn the decision on the enforcement of the award and may also, on the application of the party claiming enforcement of the award, order the other party to give suitable security.

Article VI, NY Convention; *see* 9 U.S.C. § 207 ("The Court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [NY] Convention.").

Although a district court has the power to stay enforcement proceedings under the NY Convention, whether a court should exercise that power is another question entirely. "A stay is not a matter of right, even if irreparable injury might otherwise result. It is instead an exercise of judicial discretion and the propriety of its issue is dependent upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 433-34 (2009) (citations, internal quotation marks, and original alterations omitted); *see also Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 177 (3d Cir. 2006) ("'[I]n light of the permissive language of Article VI of the Convention and a district court's general discretion in managing its own caseload and suspense docket, . . . the proper standard for reviewing a district court's decision whether to adjourn is for abuse of discretion.'" (quoting *Europcar Italia,* 156 F.3d at 316-17). When considering a stay of a proceeding to enforce a foreign arbitration award, a district court must weigh the following factors:

> (1) the general objectives of arbitration—the expeditious resolution of disputes and the avoidance of protracted and expensive litigation;
>
> (2) the status of the foreign proceedings and the estimated time for those proceedings to be resolved;
>
> (3) whether the award sought to be enforced will receive greater scrutiny in the foreign proceedings under a less deferential standard of review;

---

(e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

    (4) the characteristics of the foreign proceedings including (i) whether they were brought to enforce an award (which would tend to weigh in favor of a stay) or to set the award aside (which would tend to weigh in favor of enforcement); (ii) whether they were initiated before the underlying enforcement proceeding so as to raise concerns of international comity; (iii) whether they were initiated by the party now seeking to enforce the award in federal court; and (iv) whether they were initiated under circumstances indicating an intent to hinder or delay resolution of the dispute;

    (5) a balance of the possible hardships to each of the parties, keeping in mind that if enforcement is postponed under Article VI of the Convention, the party seeking enforcement may receive "suitable security" and that, under Article V of the Convention, an award should not be enforced if it is set aside or suspended in the originating country; and

    (6) any other circumstances that could tend to shift the balance in favor of or against adjournment.

*Europcar Italia,* 156 F.3d at 317-18 (internal citations omitted); *see also Jorf Lasfar Energy Co.,* 2005 WL 3533128, at *2-3 (applying *Europcar Italia* factors).

    **B.**    **Discussion**

    Applying these factors, the Court finds that a stay is not warranted. First, the general objectives of arbitration favor denying a stay. Parties agree to arbitration to avoid litigation and to speedily resolve disputes. Moreover, it is the policy of the United States to facilitate the resolution of disputes through arbitration. This policy is even stronger in the international context. *China Minmetals Materials Import and Export Co.* v. *Chi Mei Corp.*, 334 F.3d 274, 287 (3d Cir. 2003) (acknowledging a greater presumption in favor of arbitration proceedings in the international context). The principal purpose for acceding to the NY Convention was to "encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.,* 417

8

U.S. 506, 520 n.15 (1974). The United States policy favoring the enforcement of foreign arbitration awards therefore weighs against granting a stay.

Second, the proceedings in Taiwan are on-going. Clientron has represented, with no dispute from Devon, that it will take approximately three years for the Taiwanese litigation to fully run its course. The timing of the proceedings does not greatly sway the Court's decision one way or another. If the stay were granted and Devon lost the case in Taiwan, Devon has indicated that it would not be bound by the Taiwanese decision and thus would bring a challenge to the enforcement of the award in the United States. This Court would have a duty to perform an independent review of the award based on any of the defenses available under Article V of the NY Convention.[5] *China Minmetals*, 334 F.3d at 283 (noting that a court shall confirm the award unless it finds one of the grounds enumerated in Article V). Thus, whether the Court grants the stay or not, at some point Devon will make the arguments it has brought in its Motion to Dismiss before the Court. This Court therefore concludes that a stay will merely delay the use of judicial resources, not conserve them.

Third, there is no evidence that the Taiwanese court will fail to adequately review the arbitration award. The parties have not provided any evidence concerning the standard under which the Taiwanese court will review the award. This factor does not greatly influence the decision on Devon's Motion to Stay.

Fourth, the proceedings in Taiwan were brought by Devon to set aside the award. As the *Europcar* court indicated, this tends to weigh in favor of enforcing the award. 153 F.3d at 318. The timing of when proceedings were initiated in Taiwan is of little moment because this Court would have an independent duty to review any defenses asserted under Article V of the NY

---

[5] An unanswered issue in this case is whether this Court is to interpret § 13.3 of the Agreement *de novo* or whether this Court's ability to interpret the provision will be narrowed based on evidence of Taiwanese law that is presented by the parties under Rule 44.1.

9

Convention independent of the Taiwanese court's decision. *China Minmetals*, 334 F.3d at 283. There is no evidence from which this Court can conclude that the Taiwanese proceedings were initiated with an intent to hinder or delay resolution of the dispute.

Fifth, the Court finds that the balance of the possible hardships to the parties if a stay were granted would fall on Clientron. The NY Convention allows for an enforcing party to receive "suitable security" while a stay is in place. Devon's refusal to inform the court of its financial ability to provide such security and its statement that it would be unwilling to provide such security weigh heavily against granting a stay. Clientron should not have to bear the burden of continued delay and the risk of Devon's assets being depleted when it has already won an award in arbitration. Posting a bond would obviate this risk, of course.

To be sure, in the event that the Court confirms Clientron's award and a Taiwanese court subsequently sets aside the award, Devon would have to initiate proceedings to reclaim funds transferred to Clientron. This would undoubtedly cause Devon hardship. Nevertheless, the Court concludes that on balance the greater hardship would fall on Clientron. This weighs against granting a stay.

Finally, Clientron needs access to a United States court to enforce its arbitration award because Devon is a Pennsylvania corporation and, based on Clientron's representations, the lion's share of Devon's assets is located in Pennsylvania. Therefore, for Clientron to receive any benefit from its arbitration award, it requires a decision from a United States court. The Court finds that this also weighs heavily against staying the proceeding.

Taking all of these factors into consideration, the Court concludes that a stay is inappropriate under the present circumstances.

### IV. Propriety of Issuing a Stay under the PUFMJRA

The Court also has the power to issue a stay for Clientron's PUFMJRA claim. Because Clientron has brought its PUFMJRA claim under federal diversity jurisdiction, the Court must apply federal procedural law and state substantive law when handling that claim. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78-80 (1938). Clientron contends that the Court lacks the power to grant a stay of its state law claim because § 7 of the PUFMJRA only permits a stay when an appeal of an arbitration award is pending or could be brought. *See supra* note 3. Because Taiwanese law does not permit such an appeal, according to Clientron, the Court lacks the power to issue a stay on that claim.

The question of whether this Court has the power to issue a stay turns on whether § 7 of the PUFMJRA is procedural or substantive in nature. To answer this question, the Court must determine whether application of § 7 is likely to be determinative of the outcome of the lawsuit. In other words,

> The question is whether such a statute concerns merely the manner and the means by which a right to recover, as recognized by the State, is enforced, or . . . does it significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in State court?

*Guaranty Trust Co. v. York,* 326 U.S. 99, 109 (1945).

The Court concludes that § 7 is concerned primarily with organization and efficiency—that is, it empowers a court to grant a stay pending an appeal that may moot enforcement proceedings, thereby saving valuable judicial resources. The statute merely echoes the inherent power of a federal court "to control the disposition of the causes on its docket with economy of time and effort." *Landis*, 299 U.S. at 254. Moreover, granting a stay of enforcement proceedings has no bearing on whether a court will ultimately decide to enforce an award. "The

effect of a stay is simply to delay the trial for some period of time. It does not affect the substantive rights and duties of the litigants, and, therefore, under *Erie . . . ,* the question is one of federal law." *Herron v. Keene Corp.*, 751 F.2d 873, 875 (6th Cir. 1985). Accordingly, the Court has the power to grant a stay of Clientron's PUFMJRA claim. *See Merritt-Chapman & Scott Corp. v. Pennsylvania Tpk. Comm'n*, 387 F.2d 768, 773 (3d Cir. 1967) (holding that issuance of a stay is "within the inherent power of a court and does not require statutory authority").

What burden must be satisfied to justify a stay, however, is the subject of some contention. Circuit courts are divided as to whether a district court's decision to issue a stay pending foreign parallel litigation implicates a district court's obligation to hear cases properly brought before it. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (acknowledging the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them"). The source of the disagreement arises from the international character of these types of cases. Neither the Supreme Court nor the Third Circuit has expressed a view on when a federal court should stay a proceeding in favor of a parallel proceeding in a foreign jurisdiction. Nevertheless, two approaches have arisen from the circuit courts that have considered the issue.

The first approach can be described as the "exceptional circumstances" school. According to this view, the decision to stay a case pending foreign parallel litigation is not a question of discretion. *See Royal & Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 92 (2d Cir. 2006) ("In review of decisions to abstain, there is little practical distinction between review for abuse of discretion and review de novo."). Instead, it requires the application of the same principles that inform the Supreme Court's abstention doctrine:[6] absent

---

[6] Abstention doctrine proceeds from the premise that federal courts have a "strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996).

"exceptional circumstances," federal courts are obligated to exercise their jurisdiction in the presence of parallel foreign litigation. *See, e.g.*, *id.* ("The mere existence of parallel foreign proceedings does not negate the district courts' 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" (quoting *Colorado River*, 424 U.S. at 817)); *Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc.*, 180 F.3d 896, 898 (7th Cir. 1999) ("[W]e apply the same general [*Colorado River*] principles with respect to parallel proceedings in a foreign court." ); *Neuchatel Swiss Gen. Ins. Co. v. Lufthansa Airlines*, 925 F.2d 1193, 1195 (9th Cir. 1991) ("[T]he fact that the parallel proceedings are pending in a foreign jurisdiction rather than in a state court is immaterial. We reject the notion that a federal court owes greater deference to foreign courts than to our own state courts."). Under this framework, district courts have a non-discretionary duty to exercise jurisdiction—a duty that can only be excused in the presence of exceptional circumstances.[7]

---

This duty, however, is not absolute. A federal court should decline jurisdiction in "exceptional circumstances where denying a federal forum would clearly serve an important countervailing interest, for example, where abstention is warranted by considerations of proper constitutional adjudication, regard for federal-state relations, or wise judicial administration." *Id.* (internal quotation marks and citations omitted). *See, e.g.*, *Younger v. Harris*, 401 U.S. 37 (1971) (abstaining from a case that would interfere with a pending state criminal proceeding); *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (abstaining from a case that would interfere with certain types of state civil proceedings); *Railroad Comm'n of Tex. v. Pullman Co.,* 312 U.S. 496 (1941) (abstaining from resolving a federal constitutional question that might be obviated if the state were given the opportunity to resolve ambiguous state law); *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25 (1959) (abstaining from a case that intimately involve a state's sovereign prerogative).

[7] The Seventh Circuit has developed a list of factors that it considers when determining whether exceptional circumstances exist so as to warrant a stay of proceedings pending the outcome of foreign parallel litigation:

Relying on the guidance of the Supreme Court, we have previously considered a long list of factors:

(1) the identity of the court that first assumed jurisdiction over the property;

(2) the relative inconvenience of the federal forum;

(3) the need to avoid piecemeal litigation;

(4) the order in which the respective proceedings were filed;

Other circuits have rejected the applicability of the "exceptional circumstances" doctrine in the foreign parallel proceeding context. Instead, they employ an abuse of discretion standard. *See, e.g.*, *Itel Corp. v. M/S Victoria U (Ex Pishtaz Iran)*, 710 F.2d 199, 202-03 (5th Cir. 1983) (recognizing the district court's inherent power to stay a suit pending foreign parallel litigation and reviewing that decision for abuse of discretion); *Turner Entm't Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1518 (11th Cir. 1994) ("Federal courts have a 'virtually unflagging obligation' to exercise the jurisdiction conferred upon them. Nevertheless, in some private international disputes the prudent and just action for a federal court is to abstain from the exercise of jurisdiction." (citations omitted)). The Eleventh Circuit has based its position on the ground that the "relationship between the federal courts and the states (grounded in federalism and the Constitution) is different from the relationship between federal courts and foreign nations (grounded in the historical notion of comity)." *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1223 (11th Cir. 1999). Based on that distinction, the Eleventh Circuit has developed a discretionary standard for dismissing or staying proceedings in the presence of foreign parallel litigation—a standard that does not require exceptional circumstances.[8]

---

    (5) whether federal or foreign law provides the rule of decision;

    (6) whether the foreign action protects the federal plaintiff's rights;

    (7) the relative progress of the federal and foreign proceedings; and

    (8) the vexatious or contrived nature of the federal claim.

*Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc.*, 180 F.3d 896, 898-99 (7th Cir. 1999) (citing *Colorado River*, 424 U.S. at 818; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 23, 26 (1983)).

   [8] The Eleventh Circuit has developed a long list of factors that is similar to the factors applied by the circuit courts that have extended the "exceptional circumstances" standard to foreign parallel proceedings. The primary difference between the two standards is the burden applied when weighing these factors: the presence of exceptional circumstances versus discretion.

    (a)     International Comity Factors

    1.     Whether the judgment was rendered via fraud;

The split between the exceptional circumstances courts and the abuse of discretion courts appears to stem from disagreement over the principles underlying abstention doctrine. According to the exceptional circumstances circuits, the lesson of *Colorado River*, and related abstention cases, seems to be that—absent federalism concerns or circumstances that could be described as exceptional—federal courts have a non-discretionary obligation to exercise the jurisdiction imposed upon them by Congress. The Eleventh Circuit, however, has stated that *Colorado River* and all other abstention cases have evolved from relations between federal and state courts. It thus refuses to extend *Colorado River*'s exceptional circumstances principle beyond the federal-state context.

The Eleventh Circuit's position has some force when considered alongside *forum non conveniens* jurisprudence. Under the Supreme Court's *forum non conveniens* doctrine,

> when an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to a plaintiff's convenience, or when the chosen forum is inappropriate because of considerations affecting the court's own administrative

---

    2.    Whether the judgment was rendered by a competent court utilizing proceedings consistent with civilized jurisprudence; and
    3.    Whether the foreign judgment is prejudicial, in the sense of violating American public policy because it is repugnant to fundamental principles of what is decent and just; and
    4.    The relative strength of the American and foreign interest in the American court exercising jurisdiction

(b)    Fairness Factors

1.    The order in which the suits were filed;
2.    The more convenient forum; and
3.    The possibility of prejudice to parties resulting from abstention.

(c)    Efficient Use of Judicial Resources Factors

1.    The inconvenience of the federal forum;
2.    Avoidance of piecemeal litigation;
3.    Whether the actions have common parties and issues;
4.    Whether the alternative forum will issue a prompt decision.

*Belize Telecom, Ltd. v. Gov't of Belize*, 528 F.3d 1298, 1306-08 (11th Cir. 2008).

>   and legal problems, the court may, in the exercise of its sound discretion, dismiss the case.

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981) (internal quotation marks and original alterations omitted).  Although this doctrine has largely been superseded by statute, *see* 28 U.S.C. § 1404(a), it is still applied in cases "where the alternative forum is abroad." *Quackenbush*, 517 U.S. at 722 (internal quotation marks and citation omitted).  Thus, although the Supreme Court has not directly addressed the question of international abstention, the *forum non conveniens* doctrine is a close analogy upon which the Eleventh Circuit has based its position.  Indeed, dicta from the Supreme Court's decision in *Quackenbush* highlights the distinction between the principles underlying abstention doctrine from those that animate *forum non conveniens* doctrine.

>   [W]e have recognized that federal courts have discretion to dismiss damages actions, in certain narrow circumstances, under the common-law doctrine of *forum non conveniens*. . . . The fact that we have applied the *forum non conveniens* doctrine in this manner does not change our analysis in this case. . . . To be sure, the abstention doctrines and the doctrine of *forum non conveniens* proceed from a similar premise: In rare circumstances, federal courts can relinquish their jurisdiction in favor of another forum.  But our abstention doctrine is of a distinct historical pedigree, and the traditional considerations behind dismissal for *forum non conveniens* differ markedly from those informing the decision to abstain.  Federal courts abstain out of deference to the paramount interests of the sovereign, and the concern is with principles of comity and federalism.  Dismissal for *forum non conveniens*, by contrast, has historically reflected a far broader range of considerations, most notably the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality.

*Quackenbush,* 517 U.S. at 716 (internal citations omitted).

The Supreme Court's discussion in *Quackenbush* makes clear that abstention doctrine applies only to the relationship between state and federal courts.  The Court, therefore, finds no reason to extend the "exceptional circumstances" standard to foreign parallel litigation.  Instead, the Court is guided by broader considerations encompassed by the factors enumerated in

16

*Europcar Italia*. As discussed above, a stay is not warranted under these factors. It is on this basis that the Court will also deny Devon's Motion to Stay the PUFMJRA claim.

## V. Conclusion

For the foregoing reasons, Defendant's Motion to Stay is hereby **DENIED**. The Court will move forward with the case according to the schedule described in the Court's Order of March 4, 2014. ECF 29.

**BY THE COURT:**

**/s/ Michael M. Baylson**
_____
**MICHAEL M. BAYLSON, U.S.D.J.**

O:\CIVIL 13\13-5634 clientron v. devon it\Draft Memo re Denying Stay 3.6.14.docx