IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| CLIENTRON CORP.  v.  DEVON IT, INC., et al. | CIVIL ACTION  NO. 13-5634 |
|---|---|

Baylson, J.                                                                                                                                                                                                            August 27, 2015

**MEMORANDUM RE PLAINTIFF'S MOTION FOR SANCTIONS**

This case is an intensely disputed breach of contract dispute filed by Clientron Corp., a Taiwanese corporation which sold computer-related equipment to Defendant Devon IT, Inc., a Pennsylvania corporation. Plaintiff's second amended complaint has also made allegations against the two shareholders of Devon IT, Dr. John Bennett and his wife, Nance DiRocco.

Prior Memoranda of this Court have reviewed details about the nature of the case and the conduct of the parties. *See* Memoranda at ECF 30, 61, 105; *see also* ECF 8 (E.D. Pa. No. 14-1396). Plaintiff is a manufacturer of computer equipment and had agreements to sell substantial quantities of its equipment to Defendant Devon IT, and delivered equipment that resulted in invoices of several million dollars, which have not been paid. Prior to instituting this suit, Plaintiff had instituted an arbitration proceeding in Taiwan which was the subject of a previous opinion in this case, ECF 61, and is also the subject of cross-motions for summary judgment which are being decided by a separate Memorandum and Order, filed contemporaneously with this Memorandum and Order.

Following extensive briefing on plaintiff's motion for sanctions, the Court had a hearing on August 19, 2015.

1

The case has been unusual because of the extensive discovery disputes. Clientron has filed four separate motions to compel, *see* ECF 16 (E.D. Pa. No. 14-1396); ECF 78, 115, 134 (E.D. Pa. No. 13-5634), plus many letters to the Court detailing discovery issues (dated May 4, May 20, June 16), which were considered in conference and will be docketed, most of which the Court has found meritorious, at least in part. The Court has entered unusually high number of Orders requiring Defendants to provide discovery, many of which followed recorded telephone conferences and/or in-court hearings which documented Defendants' lack of good-faith discovery conduct. *See* Orders at ECF 20 (E.D. Pa. No. 14-1396); ECF 125, 133, 138 (E.D. Pa. No. 13-5634); *see also* ECF 127, 132, 140, 148.

In summary, the Court characterizes Defendants' responses to Plaintiff's discovery requests as espousing improper and non-meritorious objections, and then serving responses which are haphazard as to the facts, lacking in detail, frequently missing deadlines, and otherwise being incomplete and/or obstructionist. Defendants' discovery behavior can be accurately described as initially serving blanket, boilerplate, and meritless objections, followed by document production which ranged from a failure to adequately search to the proverbial data dump of voluminous but non-responsive paper, and deponents whose ignorance was only matched by their lack of preparation.

At times, Defendants' discovery behavior has been deceptive and darkly laughable, and resembles the conduct of Falstaff, the bombastic, bumbling knight in Verdi's opera of the same name, who ends up in the river Thames—but discovery in commercial litigation is not, or at least is not supposed to resemble, a comic opera.

The failure of Defendants to comply as the Federal Rules require and obey existing Court Orders is largely due to the nonchalant approach to pretrial discovery of Defendant Dr. John

Bennett, who is the co-owner, with his wife, of Devon IT, a corporation, and chairman of its board of directors. However, Dr. Bennett never took his discovery obligations seriously, particularly in obeying Orders of this Court.

Dr. Bennett recently filed for bankruptcy. Clientron has moved in the bankruptcy court to lift the automatic stay. By Order of the Court, Dr. Bennett was given the opportunity to file a separate personal response to the motion for sanctions, of which he availed himself. ECF 165, 166. Because of the automatic stay, however, the Court will not comment on Clientron's motion for sanctions as it applies to Dr. Bennett.

The Court will group the many allegations in Plaintiff's motion for sanctions, and Defendants' responses, into three categories as follows:

    1.    <u>Defendants' failure to adequately search for and produce relevant documents</u>.

The record of this case shows that Plaintiff served appropriate requests for documents, that Dr. Bennett and his wife (Nance DiRocco) are the sole shareholders of Devon IT, and that DiRocco is not at all active in the business. Although Dr. Bennett, as co-owner and chairman of the board, and as an individual Defendant in this case, had a responsibility of becoming personally involved in discovery, he claimed he did not have knowledge of many corporate activities. The record shows that Devon IT, at least at certain times, had 30 – 40 employees and justifies a conclusion that no current employee had any personal knowledge of the details of the contractual relationship between Clientron and Devon IT. The discovery record shows that although Dr. Bennett claimed that he did at one point search for documents, he also stated that he largely delegated this responsibility to others. However, considering the obligations of the corporation and the individual Defendants, they did not satisfy their obligation to search for and produce responsive paper documents and electronically stored information. Dr. Bennett, as the

effective owner of Devon IT, had the ability to control the affairs of the company and was ultimately responsible for its refusal to pay Clientron the money that had been billed for goods sold and delivered to Devon IT. However, he was unable to testify to any details supporting Devon IT's defenses or counterclaims in this case, but claimed others in the company were more knowledgeable of those details. Dr. Bennett expressed ignorance of basically all details including names of responsible officials, location of documents, etc.

Devon IT asserts that it had legitimate reasons not to pay Clientron, relating to the alleged lack of quality of the products and similar defenses, and Devon IT filed counterclaims in this case seeking damages for such deficiencies (ECF 107). The discovery record shows that Clientron endeavored to get detailed information from Devon IT about Devon IT's defenses and counterclaims, without success.

As one example, Devon IT admits that it basically conducted a "data dump" by making available to Clientron 93 boxes of irrelevant documents, and did not at all detail the documents it produced into topics, categories, or other subjects, which is not accepted in normal discovery practice by a party producing documents in commercial litigation. *See* Rule 34(b)(2)(E).

Devon IT does not adequately detail, in its responses to Clientron's motion, any appropriate explanation for Clientron's demonstration that Devon IT's discovery conduct, particularly of the chairman of its board of directors, Dr. Bennett, was deficient.

2. <u>Failure to fulfill corporate obligation regarding 30(b)(6) and obey Court orders regarding producing financial information</u>.

During Dr. Bennett's deposition, he claimed he had little knowledge of the internal workings of Devon IT and related entities on many details, which is of doubtful credibility given

the closely held nature of Devon IT, particularly its financial affairs. For example, Dr. Bennett testified:

> Q: Do you have access to the Devon IT general ledger?
>
> A: No.
>
> Q: You don't have access to it or you don't access it? Do you know the difference?
>
> A: I don't have access to it.
>
> Q: Could you access it if you wanted to? That's my question.
>
> A: If I knew it existed I would have accessed it. I don't access it. I don't know where it is. I don't care about it. I've never accessed it.

ECF 157, Ex. A, at 269 6–18. Similarly, Dr. Bennett testified with respect to funds received from Dell:

> Q. And then where did the money go specifically? I know you said operations, but where specifically did that money go?
>
> A. You'd have to ask the accountant. It's all accounted for.

*Id.* at 154:17–21.

When Clientron encountered difficulty in getting facts relevant to this case from Devon IT or Dr. Bennett, the Court encouraged Clientron to serve deposition notices under Rule 30(b)(6) on specific topics, which would then impose on Devon IT the obligation to produce one or more knowledgeable witnesses. Clientron has carefully documented, in its motion for sanctions, the complete failure of Devon IT to comply with Rule 30(b)(6).

Rule 30(b)(6) requires a corporate defendant to "designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf . . . . about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). The purpose of the rule is to "'curb the "bandying" by which officers or managing agents of a

5

corporation are deposed in turn but each disclaims knowledge' of relevant facts." *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 304 (3d Cir. 2000) (quoting Fed. R. Civ. P. 30(b)(6) advisory committee's notes). Although a corporation may be sanctioned for producing an unknowledgeable or unprepared witness, *see id.* at 303–05, difficulty identifying a knowledgeable individual or individuals to testify on the company's behalf does not excuse the obligation to produce a witness. *Kanaji v. Phila. Child Guidance Ctr. of Children's Hosp.*, No. CIV. A. 00-937, 2001 WL 708898, at *2 (E.D. Pa. June 20, 2001); *Ierardi v. Lorillard, Inc.*, No. CIV. A. 90-7049, 1991 WL 158911, at *1 (E.D. Pa. Aug. 13, 1991). Where a corporate defendant cannot produce a knowledgeable current employee, it is "is obligated to 'prepare [one or more witnesses] so that they may give complete, knowledgeable and binding answers on behalf of the corporation.'" *Ierardi*, 1991 WL 158911, at *1 (quoting *Marker v. Union Fid. Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C. 1989)).

There was extensive discussion at the hearing on August 19, 2015 about the Rule 30(b)(6) notices that Plaintiff had served in response to the Court's suggestions. There were two such notices: the first listing twenty-one topics about the contractual relationship and dealings between the parties, and the second setting forth twenty-seven topics relevant to Clientron's alter ego claims and concentrating on Devon IT's financial affairs. ECF 154, Ex. D. There was some substantive testimony produced by Defendants as to the first notice, but no 30(b)(6) witness was designated.

As to the second 30(b)(6) notice, defense counsel has represented that he overlooked this, but even so, he and his client were well aware of the obligation on Devon IT to produce financial information as part of ongoing discovery. The Court does not doubt counsel's representation that he overlooked the second 30(b)(6) notice, but the fact that defense counsel did not forward

6

the notice is immaterial because the Court and Clientron had made it clear in Orders, comments at several hearings, and motion practice that Defendants, including Dr. Bennett individually, were obligated to produce relevant financial information and the testimony requested in the 30(b)(6) notice. *See* ECF 138 ¶ 5 (noting Clientron was entitled to discovery regarding corporate finances); ECF 78 (motion to compel requesting corporate designee on alter ego topics); ECF 8 (E.D. Pa. No. 14-1396) ("Clientron may be entitled to Devon IT promptly producing corporate records including shareholder minutes and bank statements for Devon IT and all related corporations, and also to depose Mr. Bennett following the production of those documents."). Specifically, the following discussion of the issue occurred at the summary judgment hearing in April 2015:

> MR. VAN LOBEN SELS:  Your Honor, a related issue that's also a subject of our motion is the provision of Rule 30(b)(6) testimony on this subject [corporate finances] from a representative of Devon IT.
>
> THE COURT:  Right.
>
> MR. VAN LOBEN SELS:  Now, the Court's order, scheduling order, provided a specific date that they had to identify the person and provide dates.
>
> THE COURT:  Right.  I remember we had some –
>
> MR. VAN LOBEN SELS:  Right.
>
> THE COURT:  – now what's the situation there?
>
> MR. SAMMS:  We have an issue with the 30 –
>
> THE COURT:  Dr. Bennett would not be the 30(b)(6)?
>
> MR. SAMMS:  Dr. Bennett does not know enough about the finances of the company –
>
> THE COURT:  All right.  Well, who does?
>
> MR. SAMMS:  – to testify.  Well, here's the problem.  The new CFO is a guy by the name of Jim McCann.  I'm happy to have Mr. McCann testify about his knowledge about the books and the financial condition currently, I'm happy to identify him.  The reason no

7

> 30(b)(6) have been taken is I think they asked for a 30(b)(6) in 36 different areas, which would – as best we could figure it out, would require four people. All of them are no longer with the company for those areas . . . .

ECF 127, at 59:9–60:8. The Court emphasized to defense counsel that Devon IT needed to designate a current or former employee, or risk the Court awarding an adverse inference to Clientron if no designee could be adequately prepared to testify. Id. at 60:9–25; 63:12–19. On May 21, 2015, after a telephone hearing on Clientron's fourth motion to compel, the Court ordered Devon IT to produce a 30(b)(6) witness by "no later than Friday, June 19, 2015." ECF 138. Nevertheless, Devon IT failed to produce a 30(b)(6) witness on any topic.

Devon IT basically ignored its responsibilities to produce a witness on the topics in the second notice. Devon IT also failed move for a protective order based on its inability to identify a knowledgeable current employee on the first notice or on the issue of financial information. See Kanaji, 2001 WL 708898, at *2 ("The burden is on a corporation seeking to avoid compliance on the basis that the information sought is not known or reasonably knowable to move for and justify a protective order."). Defense counsel does not have any adequate explanation for Devon IT's conduct, and the Court regards this as a serious breach of discovery obligations warranting sanctions.

There is no point to allowing another deposition on these topics, as Defendants have requested. For some unexplained reason, Dr. Bennett was not sufficiently knowledgeable, and Devon IT admitted it was unable to secure another knowledgeable employee. As owner, Dr. Bennett could have and should have attempted to educate himself on the 30(b)(6) topics, but did not. Devon IT now asserts that it wants additional time, but the Court has been adamant, after almost one year has been allowed for discovery in this case, that the discovery deadline of June

30, 2015 was not going to be extended, as the Court warned counsel on many occasions.[1] Devon IT has not presented any affidavits, declarations, or other evidence that it could meet its obligations under Rule 30(b)(6) even if an extension was granted.

Thus the Court finds that sanctions are appropriate for the failure to present Rule 30(b)(6) witnesses on relevant topics.

3. <u>Bennett's deletion of emails</u>.

As documented in the exhibits presented as part of Plaintiff's motion for sanctions, Dr. Bennett routinely deleted emails from his personal account not only after he knew there were several disputes with Clientron, but also after Clientron filed its complaint in this case. For example, Dr. Bennett testified at his deposition:

> Q. What do you do with e-mails typically when they come to one of your addresses?
>
> A. I read it. I handle it and then I delete it.
>
> Q. What about sent e-mails? What do you do with your sent e-mails?
>
> A. Same thing.
>
> Q. You delete your sent e-mails immediately after sending them?
>
> A. No. No. No. After a week.
>
> Q. You don't have a formal policy, you just have sort of your informal practice on how you handle your own e-mails?
>
> A. When I get a chance I review what I received and what I sent. If I haven't handled it, I keep it. If I handled it, I delete it.

ECF 154-2, Ex. B, at 25:11–16. He further testified:

> Q. If you did receive e-mails or send [sic] e-mails after September 25 of 2013, would you have deleted them after you reviewed them?

---

[1] The Court has allowed one deposition of a Dell employee to be completed in early September, 2015.

>   A.   It's my policy for everything.
>
>   Q.   You didn't change that policy after this lawsuit was filed; right?
>
>   A.   No.

ECF 154-2, Ex. B, at 219:2–9.

"[T]he burden of proof on a spoliation claim lies with the party asserting that spoliation of evidence has taken place." *Williams v. Klem,* No. 07–1044, 2010 WL 3812350, at *2 (M.D. Pa. Sept. 22, 2010) (citing *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 107–08 (2d Cir. 2001). Spoliation occurs where four elements are present: "the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party." *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012). The Third Circuit has recently stated that there can be no spoliation of evidence without "bad faith conduct" or "intentional misrepresentation." *Bull*, 665 F.3d at 76–77. As to the fourth question, a party has "a duty to preserve what it knows, or reasonably should know, will likely be requested in either pending, or reasonably foreseeable, litigation." *Anderson v. Sullivan*, No. 1:07-cv-111-SJM, 2013 WL 4455602, at *4 (W.D. Pa. Aug. 16, 2013) (citing *Mosaid Technologies Inc. v. Samsung Electronics Co.*, 348 F. Supp. 2d 332, 336 (D.N.J. 2004)). "When litigation is reasonably foreseeable is a question of fact, which is evaluated objectively." *Id.* (citing *Bull*, 665 F.3d at 78).

A number of cases have considered spoliation in the context of deletion of emails. For example, in *Stream Companies, Inc. v. Windward Adver.*, No. 12-CV-4549, 2013 WL 3761281 (E.D. Pa. July 17, 2013), the court sanctioned the defendants for spoliation because they "actually suppressed" e-mails that were relevant and in their control. *Id.* at *3. Testimony that

the defendants had performed both of two steps required to delete emails from their hard drives was "strong evidence" of their "intent to delete them." *Id.* The court also concluded that a duty to preserve had clearly arisen after the defendants were ordered by the court to preserve evidence, including e-mails. *Id.* at *4.

Similarly, in *Kvitka v. Puffin Co.*, No. 1:06-CV-0858, 2009 WL 385582 (M.D. Pa. Feb. 13, 2009), the court determined that the plaintiff could be sanctioned for spoliation after discarding a laptop containing relevant emails:

> Here, each element is satisfied. First, . . . Plaintiffs retained the old laptop in their exclusive control. Second, [plaintiff] testified to intentionally discarding the old laptop. Third, the destroyed emails and other evidence on the old laptop would have greatly assisted Defendants in prosecuting claims based on emails that Plaintiffs destroyed. Finally, [plaintiff] has admitted that she knew to preserve the emails because of their relevance, but still discarded the old laptop. Because the elements have been satisfied, the court will permit the adverse inference instruction . . . .

*Id.* at 7.

In this case, the first and second elements are easily satisfied, as Dr. Bennett controlled his own email inbox and the discovery requested was likely to establish the existence of facts that Clientron needed to show as part of its burden of proof at trial. As to the third question, Dr. Bennett admitted to deleting emails, and without any good or sufficient reason. Neither Dr. Bennett nor any other Devon IT employee could give an explanation for the conduct of Dr. Bennett, nor document the lack of prejudice that Defendants seem to assert in their legal responses to the motion for sanctions. Devon IT responded on the spoliation issue that Clientron could have gotten these documents from the Devon IT corporate server, but by producing nothing more than a list of Bates numbers in support of this argument, Devon IT has not adequately shown that it discharged its obligation to demonstrate that *all of* Dr. Bennett's relevant emails were actually produced to Clientron from the Devon IT corporate server. *See*

ECF 157, Ex. J.  In contrast, Clientron has submitted relevant emails to and from Dr. Bennett that it received in response to a third-party subpoena, which were missing from Devon IT's production.  ECF 161, Ex. D.  Moreover, Dr. Bennett never gave any adequate explanation for his practice of continuing to delete all of his emails after this litigation had started, as the chairman of the board of Devon IT, despite not "know[ing] for sure" whether the company kept copies of all of his emails.  ECF 166, Ex. A, at 26:21–24.

Finally, the latest point at which the duty to preserve could have arisen was at the commencement of litigation before this Court, after which Dr. Bennett admits he still engaged in the practice of deleting emails immediately upon reviewing them.  ECF 154-2, Ex. B, at 219:2–9.  Devon IT also was no stranger to commercial litigation.  Devon IT was the plaintiff in a complex case against IBM before Judge Slomsky of this Court, Civil Action No. 10-2899, which recently settled with a confidential settlement agreement.  In that case, Devon IT was represented by its current defense counsel and also a major Washington D.C. litigation firm.  Of particular note in that case, Judge Slomsky had entered a very detailed electronic discovery order, dated June 17, 2011 (ECF 65), which clearly put Devon IT and Dr. Bennett on notice as to their discovery obligations concerning electronically stored information.  Therefore, the Court easily concludes that Devon IT and Dr. Bennett were well aware of the discovery obligations of parties in federal litigation and when those obligations were triggered.

Having determined that spoliation occurred, the Court must now consider the appropriate type of sanction to impose.  *Bull*, 665 F.3d at 74 n. 5.  A sanctions determination in spoliation cases analyzes three factors:

> (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.

*Anderson*, 2013 WL 4455602, at *4. These factors are among the six this Court must consider under *Poulis v. State Farm and Casualty Company*, 747 F.2d 863 (3d Cir. 1984), before awarding sanctions for the other discovery misconduct complained of by Clientron. The Court will therefore include its analysis of spoliation sanctions in its discussion of the *Poulis* factors below.

Finally, Defendants also assert that Plaintiff violated its discovery obligations in several respects, including possible spoliation of evidence. This is no defense to spoliation, in part because Defendants have not filed any motions under Rule 37.

4. <u>Sanctions for discovery abuses.</u>

The leading case in the Third Circuit on sanctions for discovery abuse is *Poulis v. State Farm and Casualty Company*, 747 F.2d 863 (3d Cir. 1984), where the Court enunciated six factors that must be considered in determining whether sanctions should be imposed, and if so, the measure of the sanctions.

In *Poulis*, the defendant sought sanctions against the plaintiff and therefore dismissal was the ultimate remedy. However, the Third Circuit has considered the *Poulis* factors in a case where a district court awarded sanctions against the defendant for failure to participate in discovery and appear at trial, *Hoxworth v. Blinder Robinson & Co., Inc.*, 980 F.2d 912 (3d Cir. 1974), and affirmed the grant of default against the defendant by district court.

The Court will state and consider the *Poulis* factors in this case as follows:

1. The extent of the party's personal responsibility. Dr. Bennett was in control of Devon IT, as chairman of the board, and who, together with his wife (who was inactive in corporate affairs), owned all of the stock of Devon IT. The record shows he took a passive and arguably deceptive attitude towards Devon IT's discovery obligations in this case.

13

2. The prejudice to Plaintiff caused by Devon IT's failure to comply with discovery orders and respond to proper discovery requests is obvious. Its conduct required frequent motions by Plaintiff (and detailed letters to the Court) to secure basic document discovery and deposition testimony, which has been very costly and prejudicial to Plaintiff. The obfuscation, objections, and delay are uncalled for, and are contrary to the cooperative "discovery culture" that applies in this Court. Compared to most other districts, motions for sanctions are infrequent, particularly for multiple breaches of discovery obligations of this type, all of which have resulted in the high probability that relevant information has not been provided to Plaintiff. Further, the expense of discovery for Plaintiff has been unreasonably escalated by Devon IT's conduct.

3. Devon IT has been involved in other complex commercial litigation in this district, but there is no known history of abuse in these other cases. The Court discounts this as an important factor given the egregiousness of its behavior in this case. In the IBM case, Devon IT was the plaintiff, so it of course was diligent about discovery to prosecute its claims.

4. Whether the conduct of the party and the attorney was willful or in bad faith. As noted above, this Court does not have any reason to accuse Defendants' attorney of complicity. Numerous deposition transcripts and the conduct discussed above show that the conduct of the Defendants themselves, particularly Dr. Bennett, was willful and in bad faith. This includes Dr. Bennett's failure to personally search for documents, his professed ignorance in responding to many deposition questions, and his deletion of his emails, etc.

5. Whether there are effective sanctions other than a default entails an analysis of alternative sanctions. Here there are a variety of sanctions that are under consideration. The Court can and will impose a monetary sanction of $44,320.50 because of the extra costs imposed upon Plaintiff which Plaintiff has detailed in its moving papers. These monetary sanctions are

insufficient, however, to remedy the prejudice Clientron has suffered in its ability to pursue its case.

Plaintiff requests that, as a sanction, the Court "pierce the corporate veil" and hold Dr. Bennett and his wife DiRocco personally liable for any judgment that would be rendered in favor of Clientron and against Devon IT. This Court is aware that under Pennsylvania law, the corporate form is well recognized and Pennsylvania courts have traditionally found a high burden of proof before piercing a corporate veil and imposing personal liability on the corporate shareholders. *Wedner v. Unemployment Compensation Bd. of Review*, 296 A.2d 792, 794–95 (Pa. 1972) ("[A]ny court must start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception. . . . Care should be taken on all occasions to avoid making 'the entire theory of the corporate entity useless." (quoting *Zubik v. Zubik*, 384 F.2d 267, 273 (3d Cir. 1967)) (internal quotation marks omitted)). The Court is likewise aware of precedents that would allow such a drastic remedy merely because of discovery abuse. *See Volkart Brothers, Inc. v. M/V Palm Trader*, 130 F.R.D. 285 (S.D.N.Y. 1990); *Amway Corporation v. Shapiro Express Co., Inc.*, 102 F.R.D. 564 (S.D.N.Y. 1984). In both of these cases, the courts found that discovery abuses existed and, although did not directly make the individuals liable for corporate liabilities, nonetheless precluded introduction of evidence or assertion of defenses with the effect that the defendants could not assert the corporate existence to avoid individual liability at trial. Because this sanction would lie against Dr. Bennett individually, however, the Court will reserve its consideration of this sanction because Dr. Bennett is currently entitled to the protection of a bankruptcy stay.

Another potential sanction against Devon IT would be to recognize the judgment entered in Taiwan in favor of Clientron and against Devon IT on the Taiwanese arbitration award. This Court is filing a separate Memorandum and Order on the cross-motions for summary judgment filed by the parties, and ruling in favor of Plaintiff that the Taiwanese judgment will be recognized in this Court under Pennsylvania comity principles as binding on Devon IT. As noted in more detail in that opinion, since this Court's prior opinion on the enforceability of the arbitration award, a court of record in Taiwan has refused to revoke the award, resulting in a final court judgment on the issue of whether the SPA's arbitration clause encompassed the disputed products, which is recognizable under Pennsylvania comity principles.

The Court raised this issue at a hearing on August 19, 2015, and after full consideration of all of the facts and the law, finds that an appropriate sanction for Devon IT's discovery abuse in this case is enjoining it from offering evidence that the arbitration clause in the Supply and Purchase Agreement ("SPA") between the parties did not cover the products at issue in the Taiwanese arbitration. One factor warranting this sanction is the overall nature of this litigation. At the very start of this case, Clientron sought enforcement of an award entered by a Taiwanese arbitration panel pursuant to the SPA's arbitration clause. In a lengthy Memorandum (ECF 61), this Court declined to enforce the arbitration award in its procedural status as of that time. In the Memorandum, the Court noted that Clientron was not prejudiced because it could pursue its contractual claims against Devon IT in this Court under a breach of contract theory, even though that might be duplicative and more expensive than simply enforcing the arbitration award from Taiwan.

Two events have happened since this Court's prior decision. First, the decision of the arbitration panel has been upheld by a Taiwanese court of record, and this Court is ruling in a

16

separate Memorandum and Order that this order is enforceable under Pennsylvania law on international comity.

Second, it has become apparent that the Court was erroneous in assuming that Clientron could effectively pursue its claims in this Court under a breach of contract theory. Devon IT's conduct in the litigation, as detailed in the Clientron motion for sanctions and summarized above, shows that it has failed to recognize its obligations as a litigant under the Federal Rules of Civil Procedure, and that, as an additional sanction, in addition to the legal reasons stated above, enforcement of the Taiwanese court judgment would be an effective way of giving Clientron the benefit of its arbitration proceedings since it may be unable, despite its forethought and expensive efforts, to pursue and prove its contractual claims against Devon IT in this Court.

## CONCLUSION

As noted above, the Court cannot grant sanctions against Dr. Bennett due to the bankruptcy stay, and the record does not support sanctions against DiRocco individually. The Court will reserve consideration of whether piercing the corporate veil would be an appropriate sanction against Dr. Bennett for his individual conduct. For the reasons stated above, Plaintiff's motion for sanctions will be **GRANTED** as follows:

1. Defendant Devon IT shall pay Plaintiff the requested sum of $44,320.50 within ten (10) days. If Devon IT fails to make this payment, Plaintiff may request the Court to enter judgment against Devon IT for that amount.

2. The Court will exclude Devon IT's evidence in support of its defense against enforcement of the arbitration award under Pennsylvania's Uniform Foreign Money Judgment Recognition Act ("UFMJRA") that the SPA did not cover the disputed products. In light of the

Court's Memorandum and Order awarding Plaintiff summary judgment on its UFMJRA claim, Plaintiff will likely be entitled to a monetary judgment in its favor.

3. The Court will also exclude any evidence supporting Devon IT's defenses to Clientron's breach of contract claim that was not disclosed during pretrial proceedings in this case, either in testimony by any witness, or documents produced by either party.

4. The Court declines to dismiss Devon IT's counterclaim. However, Devon IT will be precluded from presenting any evidence to support its counterclaim that was not disclosed during pretrial proceedings in this case, either in testimony by any witness, or documents produced by either party.

5. As an alternative to the reasons stated for enforcing the judgment of the Taiwanese court against Devon IT, the Court will, as a sanction, reach the same result on the UFMJRA claim.

6. Under the procedure described in the accompanying orders, Plaintiff shall submit more a detailed form of order granting the relief described in this Memorandum in favor of Plaintiff, subject to comments by Defendants.

An appropriate order follows.

O:\CIVIL 13\13-5634 clientron v. devon it\13cv5634.082615.memo.sanctions.docx