IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CLIENTRON CORP., <br><br> Plaintiff, <br><br> v. <br><br> DEVON IT, INC., <br><br> Defendant. | CIVIL ACTION <br><br> NO. 2:13-cv-05634 |

**DEFENDANTS DEVON IT, INC., JOHN BENNETT, M.D. AND NANCE DIROCCO'S REVISED PRETRIAL MEMORANDUM**

Defendants Devon IT, Inc. ("Devon IT"), John Bennett, M.D. and Nance DiRocco, by and through their undersigned counsel, hereby submit this Revised Pretrial Memorandum as follows:

**I.   STATEMENT OF NATURE OF ACTION AND JURISDICTION**

This action was originally instituted by Clientron Corp. ("Clientron Corp.") to enforce a Taiwanese arbitration award for Devon IT's alleged nonpayment for thin client computers manufacture. Thereafter, Clientron instituted a second action for breach of contract and fraud against Devon IT and Dr. Bennett under certain allegedly non-cancelable purchase orders (the "Purchase Orders"). These actions were consolidated and Ms. DiRocco was added as a Defendant. Clientron seeks to pierce the corporate veil of Devon IT to hold Dr. Bennett and Ms. DiRocco personally liable for Devon IT's debts. Devon IT counterclaimed for breach of contract and fraud. The Court has diversity jurisdiction over the parties and the amount in controversy exceeds $75,000. In its December 22, 2015 Memorandum, the Court decided that it has jurisdiction over the Purchase Order claims. *See* ECF No. 215, pg. 13.

5001482

On August 28, 2015, this Court granted summary judgment to Clientron for the amount of the Taiwanese arbitration award. However, Clientron continues to seek additional damages in connection with the Purchase Orders, based on breach of contract and fraud. Devon IT has asserted that the Purchase Order claims should be precluded because they could have been litigated as part of the Taiwanese arbitration. This issue has not been resolved.

Devon IT has counterclaimed against Clientron for overcharges in violation of the parties' agreed-upon pricing terms, under which Devon IT was to pay Clientron its cost or bill of materials ("BOM") plus 10%. On December 22, 2015, the Court entered summary against Devon IT on all of its other counterclaims against Clientron.

The only other issues in this case are Clientron's claims seeking to pierce the corporate veil against Dr. Bennett and Ms. DiRocco. Devon IT believes the veil-piercing claims can and should be tried separately to the Court, as set forth in its motion for bifurcation filed on January 20, 2016.

## II. COUNTERSTATEMENT OF FACTS

Devon IT is a Pennsylvania corporation formed by Dr. Bennett that sells thin client hardware and software. Dr. Bennett and Ms. DiRocco own Devon IT's one thousand shares as tenants by the entirety. Clientron Corp. ("Clientron") is a thin client manufacturer and distributor based in Taiwan. Devon IT was incorporated in 1999, as a support company for a stop loss provider, Ullico, and then expanded into the thin client field. Devon IT sold software to ICBC Bank in China. In or around 2004-2005, Devon IT began focusing on breaking into the thin client field and started a relationship with a thin client manufacturer called START. Devon IT began purchasing thin clients from VIA. Devon IT later began buying thin client hardware from USI for a contract with IBM. In 2008, Devon IT and Clientron began negotiations for Clientron

2

to manufacture hardware products, culminating in the execution of the SPA between Devon IT and Clientron. Thereafter, Devon IT submitted a Request for Quotation ("RFQ") to Dell for a contract to manufacture thin client products. At the time of the Dell RFQ, Dell considered Devon IT, Wyse and a German company to be potential thin client suppliers. Eventually, Dell awarded the contract to Devon IT.

As part of the Dell RFQ process, Devon IT approached Clientron to act as Devon IT's manufacturer of thin client hardware as part of its bid. Clientron, through its President Robert Chin, agreed that Clientron's price to Devon IT would be the cost of the bill of materials ("BOM") plus a 10 percent markup; however, Clientron charged Devon IT in excess of this agreed upon amount. Clientron's invoices dated 3/12/2012, 3/28/2012, and 3/31/2012 contained incorrect pricing information, where the prices were higher than the prices set forth on the then-current Clientron price schedule. Clientron engaged in tactics to conceal their overcharges by continuously refusing to share the BOM with Devon IT. The only reason not to provide the costed BOM was to conceal these overcharges. This refusal lasted the entire relationship and caused problems with Dell.

Devon IT paid Clientron some $3,283,013.92 in overcharges. Because of the overcharges and Clientron's refusal to disclose its BOM, Devon IT began withholding payments to Clientron. On April 2, 2012, Dell terminated its contract with Devon IT and announced its acquisition of Wyse. Clientron was well aware of the termination of the Dell contract, but allegedly continued to fill the Purchase Orders even though it knew that Dell would not pay for them.

After Dell terminated its contract with Devon IT, Devon IT asserted that Dell had breached its contract with Devon IT. Devon IT entered into a settlement agreement with Dell.

5001482

Devon IT used its payments from Dell under the contract and under the settlement to fund its operations pending its dispute with Clientron.

Clientron's claim for breach of contract under the Purchase Orders is barred by claim preclusion and/or waiver. Clientron has consistently maintained that the Purchase Orders were subject to the provisions of the SPA; however, when Clientron was arbitrating its claims under the SPA in Taiwan, it failed to raise any claim for the Purchase Orders before the panel. Clientron has offered no explanation for not bringing all of its alleged claims at the same time. Therefore, Clientron's claims for breach of contract under the Purchase Orders is precluded by the arbitration award. If however, the Court decides that this claim is not precluded by the arbitration award, Clientron's claim is barred, in whole or in part, by its failure to mitigate its alleged damages.

Clientron's fraud claim is highly suspect. According to Clientron's Second Amended Complaint, Clientron alleges that it fulfilled the Purchase Orders in reliance on promises of payment from Dr. Bennett. Specifically, Clientron alleges that Devon IT placed the Purchase Orders between October 28, 2010 and March 30, 2012. *See* ECF No. 83, ¶39. However, Clientron alleges that Dr. Bennett's fraudulent conduct occurred on April 12, 2012, April 24, 2012, May 3, 2012, wherein it is alleged he promised to pay for outstanding invoices, including the invoices generated under the Purchase Orders. *See* ECF No. 83, at ¶¶ 52, 54, and 56. Thus, Clientron could not have relied on misrepresentations in April with respect to Purchase Orders that were already filled and invoiced before April. With respect to Purchase Orders that were not filled before April, Clientron could not have relied justifiably on any representations after April 2, 2012, when Dell terminated its contract with Devon IT, a fact of which Clientron was well aware. Clientron knew that Devon IT could no longer supply products to Dell or expect payment

5001482

from Dell for products shipped after that date. Therefore, Clientron could not have reasonably believed that any unfilled Purchase Orders were still in effect.

The facts on which Clientron relies to pierce Devon IT's corporate veil may support other legal or equitable remedies, but they do not support disregarding Devon IT as separate entity from Dr. Bennett and Ms. DiRocco. There is a strong presumption against piercing the corporate veil and the burden of proof is "clear and convincing evidence". *See Lumax Indus., Inc. v. Aultman*, 669 A.2d 893, 895 (Pa. 1995) and *Trs. Of Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188, 194 (3d Cir. 2003). Further, "Pennsylvania…does not allow recovery unless the party seeking to pierce the corporate veil on an alter ego theory established that the controlling corporation wholly ignored the separate status of the controlled corporation and so dominated and controlled its affairs that its separate existence was a mere sham." *E. Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 333 n.6 (3d Cir. 2000). "In other words…Pennsylvania…require[s] a threshold showing that the controlled corporation acted robot- or puppet-like in mechanical response to the controller's tugs on its strings or pressure on its buttons." *Id.*

During its relationship with Clientron, Devon IT was a functional corporation with an identity separate and apart from Dr. Bennett and Ms. DiRocco. Devon IT observed important corporate formalities, notwithstanding its closely-held status. Devon IT had executive officers specifically: in 2010, Joe Makoid, President, Paul Mancini, Vice President of Sales and Marketing, Stephane Verdy, Chief Technology Officer; in 2011, Joe Makoid, President, Paul Mancini, Vice President of Sales and Marketing, Ian Geiser, Chief Technology Officer; and in 2012 and 2013, Joe Makoid, President, Paul Mancini, Vice President of Sales and Marketing, Ian Geiser, Chief Technology Officer, Mark Sieczkowski, Vice President of Delivery Solutions.

5

5001482

Devon IT had monthly executive meetings. Devon IT maintained its own bank accounts. Devon IT filed its own tax returns, which were prepared by an outside accountant.[1]

Devon IT has produced substantial corporate records in discovery. Devon IT produced its incorporating documents, including its stock certificate, its Shareholder Agreement, its Bylaws and Resolutions of the Board of Directors ratifying Devon IT's transactions. Devon IT produced General Ledger Detail Reports from 2010 to 2015. The accounting department is responsible for maintaining Devon IT's General Ledger, specifically, Brad Weber, and previously Mike Butto, and before that, George Clark. Devon IT produced bank statements from 2010 to 2014. Devon IT produced tax returns from 2010 to 2014 (or in the alternative, documentation of extensions for time to file). Devon IT paid its own expenses through allocations to the shared services group. Devon IT had forty employees, who worked exclusively for Devon IT during the times described in the Complaint. Devon IT has its own offices that are separate from any other Devon entity and are denoted by signage. Devon IT was appropriately capitalized for its business purposes at formation, although it later suffered financial reverses due in large part to the loss of the Dell and JPMC contracts. Moreover, additional paid in capital over the life of Devon IT has been over $21 million dollars.

Discovery has shown that Dr. Bennett did not dominate the affairs of Devon IT and that Ms. DiRocco never exercised any control over or dominated the affairs of Devon IT. At most, Dr. Bennett had the final say in important matters. Clientron has admitted that it has not uncovered any evidence that Ms. DiRocco controlled Devon IT in any way. Without evidence of

---

[1] In its December 22, 2015 Memorandum, the Court has already noted that it was not uncommon for husband-wife owned businesses to not follow all corporate formalities, for example, holding shareholder meetings only on an as-needed basis, not electing officers were officers are appointed, and not holding board of director elections where there is only one board member, in this case, Dr. Bennett. *See* ECF No. 215, pg. 4.

5001482

domination and control by Devon IT's shareholders, Clientron's claim seeking to pierce Devon IT's corporate veil must fail.

The fact that Dr. Bennett and Ms. DiRocco own various entities together as tenants by the entireties is completely lawful and not a ground for piercing the corporate veil. The testimony shows that these entities were formed for valid business purposes. Clientron's arguments regarding the value of various transactions between other Devon entities and Dr. Bennett and Ms. DiRocco are unfounded and can be explained at the time of trial.

### III. MONETARY DAMAGES CLAIMED

Devon IT claims damages in the following amount on its counterclaim:

- $3,283,013.92 (plus interest) in overcharges

### IV. WITNESSES

Defendants reserve the right to call any and/or all of the following witnesses at the time of trial in this matter and reserve the right to substitute witnesses or add additional witnesses:

John Bennett, M.D.
c/o Gary Samms, Esquire
Obermayer Rebmann Maxwell & Hippel LLP
1617 John F. Kennedy Blvd, 19th Floor
Philadelphia, PA 19103

Joseph Makoid
c/o Gary Samms, Esquire
Obermayer Rebmann Maxwell & Hippel LLP
1617 John F. Kennedy Blvd, 19th Floor
Philadelphia, PA 19103

Mark Sieczkowski
c/o Gary Samms, Esquire
Obermayer Rebmann Maxwell & Hippel LLP
1617 John F. Kennedy Blvd, 19th Floor
Philadelphia, PA 19103

Ian Geiser
c/o Gary Samms, Esquire

Obermayer Rebmann Maxwell & Hippel LLP
1617 John F. Kennedy Blvd, 19th Floor
Philadelphia, PA 19103

Nance DiRocco
c/o Gary Samms, Esquire
Obermayer Rebmann Maxwell & Hippel LLP
1617 John F. Kennedy Blvd, 19th Floor
Philadelphia, PA 19103

Current and/or Former Chief Financial Officers of Devon International Group
c/o Gary Samms, Esquire
Obermayer Rebmann Maxwell & Hippel LLP
1617 John F. Kennedy Blvd, 19th Floor
Philadelphia, PA 19103

Barry Mulhern, Esquire
c/o Gary Samms, Esquire
Obermayer Rebmann Maxwell & Hippel LLP
1617 John F. Kennedy Blvd, 19th Floor
Philadelphia, PA 19103

Dr. Chung –Teh Lee or a representative of Lee, Tsai & Partners
Lee, Tsai & Partners
9th Fl., 218 Tun Hwa S. Rd., Sec. 2
Taipei 106, Taiwan, R.O.C.

Robert Chin
c/o John Van Loben Sels, Esquire
Fish & Tsang LLP
333 Twin Dolphin Drive, Suite 220
Redwood City, CA 94065

Carol Hung
c/o John Van Loben Sels, Esquire
Fish & Tsang LLP
333 Twin Dolphin Drive, Suite 220
Redwood City, CA 94065

Joey Wang
c/o John Van Loben Sels, Esquire
Fish & Tsang LLP
333 Twin Dolphin Drive, Suite 220
Redwood City, CA 94065

5001482

Chris Ke
c/o John Van Loben Sels, Esquire
Fish & Tsang LLP
333 Twin Dolphin Drive, Suite 220
Redwood City, CA 94065

Paul Kuo
c/o John Van Loben Sels, Esquire
Fish & Tsang LLP
333 Twin Dolphin Drive, Suite 220
Redwood City, CA 94065

Corporate Designee of Clientron Corp.
c/o John Van Loben Sels, Esquire
Fish & Tsang LLP
333 Twin Dolphin Drive, Suite 220
Redwood City, CA 94065

Kyle Anne Midkiff
c/o John Van Loben Sels, Esquire
Fish & Tsang LLP
333 Twin Dolphin Drive, Suite 220
Redwood City, CA 94065

Juan Vega
c/o Sinead O'Carroll
Reeves & Brightwell LLP
221 W. 6th St, Suite 1000
Austin, TX 78701

Michael Dell
c/o Sinead O'Carroll
Reeves & Brightwell LLP
221 W. 6th St, Suite 1000
Austin, TX 78701

Corporate Designee of Dell
c/o Sinead O'Carroll
Reeves & Brightwell LLP
221 W. 6th St, Suite 1000
Austin, TX 78701

Corporate Designee of Wyse
c/o Sinead O'Carroll
Reeves & Brightwell LLP
221 W. 6th St, Suite 1000

5001482

Austin, TX 78701

Aaron Schweigert
270 Park Avenue
New York, NY 10017

Corporate Designee of JPMC
270 Park Avenue
New York, NY 10017

Kevin McNamara
265 Sunrise Hwy
Rockville Centre, NY 11570

## V. SCHEDULE OF EXHIBITS

Please see Defendants' Schedule of Exhibits, attached hereto as Attachment "A." Defendants reserve the right to use any exhibits identified in Clientron's Pretrial Memorandum, as well as to introduce additional exhibits in rebuttal.

## VI. ESTIMATE OF NUMBER OF TRIAL DAYS NEEDED

It is estimated that 6-8 full days of trial will be needed.

## VII. SPECIAL COMMENTS

Defendants have filed a motion to bifurcate the trial to try Clientron's veil piercing claims separately and stay trial on the remaining claims on January 20, 2016 that is pending decision by the Court. Additionally, in its December 22, 2015 Memorandum, the Court indicated that it would seek explanation for the following factual issues:

> 1. Whether there is a valid explanation for $24 million worth of purposed net transfers from Devon IT to other Devon entities Bennett and DiRocco control, including whether Devon IT paid for consulting services to a Devon entity that did not provide them;
>
> 2. Whether settlement money Devon IT received from Dell (to the tune of approximately $.65 million) and IBM (a substantial, though currently confidential, amount) was siphoned off to benefit Bennett and DiRocco;
>
> 3. Whether a purported $3.5 million loan from Devon IT to "shareholder" (which would have to be either Bennett or DiRocco) documented in Devon IT's records is a mistaken

5001482

entry or a reflection of money being transferred;

4. Whether there is a justifiable reason for the dramatic fluctuations in rent payments Devon IT paid to another company that Bennett and DiRocco own;

5. Whether Bennett and/or DiRocco received a salary from Devon IT; and,

6. Whether Devon IT paid dividends to Bennett and DiRocco.

ECF No. 215 at 7-8 (footnotes omitted).

Defendants will supply explanation for these matters either at a bifurcated trial on Clientron's veil piercing claims or a full trial on all the issues if the Court should so decide.

Respectfully submitted,

*/s/ Gary M. Samms*
Gary M. Samms, Esquire
Counsel for Defendant
Devon IT, Inc., John Bennett, M.D., and
Nance DiRocco

Dated:  January 20, 2016

## **CERTIFICATE OF SERVICE**

I, Gary M. Samms, do hereby certify that a copy of the foregoing Revised Pretrial Memorandum was electronically filed with the Clerk of Court and a copy hereof served on each counsel of record on the date listed below via the Court's ECF system.

Dated: January 20, 2016

/s/ *Gary M. Samms*
Gary M. Samms

5001482